**SOUTHERN RAILWAY COMPANY, Appellant,**

v.

**Mrs. Mary I. CAMPBELL, Appellee. No. 19438.**

United States Court of Appeals Fifth Circuit.

Nov. 7, 1962.

Rehearing Denied Jan. 11, 1963.

Edgar A. Neely, Jr., Greene, Neely, Buckley & DeRieux, Atlanta, Ga., for appellant.

Hamilton Lokey, Atlanta, Ga., Robert B. McCord, Jr., Hapeville, Ga., for appellee, Mrs. Mary I. Campbell.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and JOHNSON, District Judge.

JOHNSON, District Judge.

This diversity action originated in the United States District Court for the Northern District of Georgia by complaint filed by the mother of the deceased John Robert Campbell, Jr., seeking to recover damages for the death of her minor son, who was killed on October 30, 1958, when hit by one of the appellant's trains on a trestle spanning Peachtree Creek, inside the city limits of Atlanta, Georgia. The case was tried without a jury, and detailed findings of fact and conclusions of law were made and entered by the District Judge, Campbell v. Southern Railway Company, D.C., 198 F.Supp. 661, and an appropriate judgment was entered thereon against the railroad in the amount of $22,500. It is from this judgment that the railroad appeals to this Court.

Appellant contends that both the findings of fact and the conclusions of law as made by the District Court are erroneous and, further, that the District Court committed prejudicial error in requiring the production of certain documents.

On the date of his death, John R. Campbell, Jr., was approximately 13½ years of age. On August 30, 1958, the youth and his father, John R. Campbell, in the course of returning from a Saturday afternoon hike, started walking, heading north, across a railway trestle that was owned and maintained by the Southern Railway Company. A few minutes before getting on the trestle, the father and son saw a train cross the trestle going south on the southbound (west) track. The trestle was approximately 312 feet long, supported two

tracks running generally north and south; the highest point of the trestle was approximately 50 feet above Peachtree Creek. There were no walkways and no barriers and no signs at either end of the trestle. Approximately 600 feet north of the trestle, the tracks turn sharply to the left behind a large embankment. The embankment was sufficiently large to obscure the trestle from the train crew approaching from the north until approximately 700 feet from the north end of the trestle. When the father and son had reached a point about 78 feet from the north end of the trestle, they heard the whistle of a train approaching from the north—the same direction as the previous train. Mr. Campbell and his son moved over to the east track but when the train emerged from behind the embankment, they saw it was on the track they had moved on. The train's emergency brakes were immediately applied but with very little initial effect, and before Mr. Campbell and his son could get on the other track, the train brushed the father and killed his son. The Southern Railway train was being operated by Couch, an engineer, Fitzpatrick, a fireman—but qualified and then acting as engineer.

At the time of the incident in question, the District Court found the train was being operated with company authority at a speed "in excess of 55 miles per hour" and in violation of an existing and valid City of Atlanta ordinance restricting the speed of trains within the city limits to 25 miles per hour.[1] We agree with the lower court that the evidence fully warranted this finding and also a further finding and conclusion to the effect that this speed constituted negligence. Wright v. Southern Railway Company, 139 Ga. 448, 449, 77 S.E. 384; Central of Georgia Railway Company v. Bond, 111 Ga. 13, 36 S.E. 299.

The trestle was located in a business and industrial district of Atlanta, with at least one small community nearby, and the evidence fully justified the lower court in finding that the trestle was used by members of the public as a means of crossing Peachtree Creek at that point, and, further, there was a well-defined pathway leading to the tracks near the trestle. The evidence was ample to show that the railway's employees had observed the public using the trestle as a walkway and Engineer Couch very candidly testified that on at least two occasions he had seen young boys out on the trestle. It is highly significant to note that the operating members of this train crew were aware that the train could not possibly be stopped within the distance the trestle could be seen by the train crew when operating in a southerly direction, i. e., from behind the embankment and toward the trestle. As a matter of fact, we think it fair to say that the train crew was even aware that the train—896 feet in length and going at a speed in excess of 55 miles per hour—could hardly be slowed to any significant extent in the distance from the embankment—where the trestle could first be seen—and the north end of the trestle. As to the application of the doctrine of "duty to anticipate," the facts in this case are even stronger than those in the case of Shaw v. Georgia Railroad, 127 Ga. 8, 55 S.E. 960, where the Supreme Court of Georgia said:

"In view of the evidence in this case upon the question of frequent use of the railroad track, at the particular place of the homicide, by pedestrians as a pathway, known to the defendant company, we think, as a question of fact, it should have been submitted to the jury to say whether or not the use was shown to exist to such an extent as to require those operating the cars of the

1. Section 48.8, Atlanta City Code:
"Speed of Trains. No train shall run anywhere within the City at a greater rate of speed than 25 miles per hour.

No person in authority shall issue or cause to be issued an order requiring a greater rate of speed than 25 miles per hour at any place within the City."

defendant to anticipate the presence of persons on the track. If the evidence was such as to require them to anticipate the presence of pedestrians on the track, then they were bound to use ordinary care to avoid injury to anyone who might be on the track at that place."

In this connection, see also: Macon and Birmingham Railway Co. v. Parker, 127 Ga. 471, 56 S.E. 616; Georgia Southern & Florida Ry. Co. v. Wilson, 93 Ga.App. 94, 91 S.E.2d 71; Central of Georgia Ry. Co. v. Sharpe, 83 Ga.App. 12, 62 S.E.2d 427; and Atlantic Coast Line Railroad Company v. Futch, 263 F.2d 701.

■ The duty to exercise ordinary care, under the circumstances of this case, is not affected by the fact that the deceased was a trespasser. Williams v. Southern Railway Co., 11 Ga.App. 305, 75 S.E. 572.

■ The basis for the award by the trial court to the plaintiff was an application of Georgia's comparative negligence doctrine and was that plaintiff's loss of her son injured and damaged her in the sum of $30,000; that defendant's negligence was the proximate cause of her loss; that plaintiff's minor son was negligent in going upon the double track and his negligence in this respect contributed to but was not the sole proximate cause of his death, and, further, that the negligence of the youth did not equal nor exceed the negligence of the defendant, but that only twenty-five percent of the fault was attributable to the plaintiff's son. Applying this to the Code of Georgia 94–703, the award of $22,500 was proper. Also Georgia Railway & Power Company v. Belote, 20 Ga. App. 454, 93 S.E. 62.

■ Considering all the findings of the trial court, with the "clearly erroneous" rule in mind, we come to the conclusion that said findings are supported by the great preponderance of the evidence and the reasonable inferences to be drawn therefrom. Rule 52(a), Federal Rules of Civil Procedure; Wheeler v. Holland, 218 F.2d 482 (5th Cir., 1955); and Des Isles v. Evans, 225 F.2d 235 (5th Cir., 1955).

Appellant's complaint concerning the trial court's order for the production of documents under Rule 34 of the Federal Rules of Civil Procedure is also without merit. The Court ordered the railroad to produce:

"All records of the names of witnesses and all statements of person (whether on tape or reduced to writing) who were witnesses to or had any knowledge of the circumstances surrounding the death of plaintiff's son.

"All reports of employees or agents of defendant concerning the occurrence.

\*    \*    \*    \*    \*    \*

"All records and reports of investigations made into the death of plaintiff's son by any employees or agents of defendant."

■■ In an affidavit attached to the motion to produce, it was shown that the documents and records were in existence, that statements were taken by the agents of the railroad soon after the occurrence —including statements from the train crew and a statement from the father of the deceased youth; and, further, that the plaintiff did not engage counsel until six months after the occurrence. The trial court found this showing "good cause." We do not think this was error. Moore's Federal Practice, Vol. 4, Par. 34.08. The principles of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) were not violated. The trial judge correctly observed that "[s]tatements taken by a claim agent are not generally considered to be the 'work product of a lawyer in preparation for the defense.'"

The case was fully and fairly tried and the judgment of the trial court was right. It is

Affirmed.