PEROTI *v.* WILLIAMS, ET AL.

[No. 423, September Term, 1969.]

*Decided July 9, 1970.*

The cause was argued before HAMMOND, C. J., and Mc-WILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Cooper C. Graham,* with whom were *Henry L. Belsky* and *London, Potler & Belsky* on the brief, for appellant.

*Gilbert A. Hoffman,* with whom was *Frank X. Gallagher* on the brief, for Bill Ward Williams and the Yellow Cab Company, part of appellees; and *David D. Patton,* with whom was *Lloyd A. Dreiling* on the brief, for Robert Lee Pompey, other appellee.

DIGGES, J., delivered the opinion of the Court.

Appellant, Dorothy Peroti, as plaintiff instituted a personal injury suit in the Superior Court of Baltimore City. Judge Jones directed a verdict against defendant, Robert Lee Pompey as to *liability* only. The case went to the jury on the issue of damages as to all defendants, and as to negligence on the part of defendants Bill Ward Williams and The Yellow Cab Company. The jury returned a verdict in favor of all defendants. After denial of a motion for a new trial judgments were entered in their favor for costs. Appellant seeks redress in this Court for what she claims was the obvious failure of the jury to follow the court's instructions.

The origin of this litigation was an automobile collision in Baltimore on July 20, 1966. Appellant Mrs. Peroti had engaged a taxicab owned by appellee Yellow Cab Company and driven by appellee Bill Ward Williams. Mrs. Peroti claims she directed Williams to take her and her grandson to an address on Guilford Avenue; Williams says the direction was more general, North and Guilford Avenues. In any case after Williams had driven east

on North Avenue and passed the intersection of North and Guilford he became aware that Mrs. Peroti wished to go to the specific address. After some discussion about whether he could circle the block, Williams began slowly backing up in the curb lane of North Avenue. He testified he could see appellee Pompey coming south on Guilford, but assumed he would obey the stop sign posted at the corner. Pompey testified he intended to turn right onto North Avenue. He said he stopped for a few minutes at the stop sign, and after looking to the left and glancing to the right pulled out into North Avenue. Pompey's left front fender struck Williams' cab on the right rear fender. Both drivers described the impact as light, and an investigating officer testified the damage was slight to each vehicle. Mrs. Peroti without attempting to describe the force of the impact stated she was lifted from her seat "forward and sideways." She stated that immediately following the impact she had pains in her pelvis, neck, fingers, chest, back and legs. An ambulance arrived on the scene, but refused to transport Mrs. Peroti to a hospital, apparently because the attendant did not think her injuries, if any, were serious. Williams drove her to Johns Hopkins Hospital, but she decided not to remain and without receiving treatment hired an ambulance to take her to Provident Hospital. She remained there sixteen days, but left without being discharged by simply calling a taxicab (not Williams'). A Dr. Caguin treated Mrs. Peroti both at Provident Hospital and subsequent to her stay there.

Mrs. Peroti claimed numerous injuries as the direct result of the cab accident. She contended she received a fractured rib and injury to the lower back, and in addition an aggravation of a pre-existing condition, "inhangs" or achalasia of the esophagus. Dr. Caguin confirmed that he diagnosed the above-mentioned complaints when Mrs. Peroti entered Provident Hospital, and based on his examination and the history she gave, stated it was his opinion that the fracture and back strain were caused, and the achalasia was aggravated, by the car accident.

Appellee Yellow Cab Company and Williams produced as an expert witness Dr. Sam Legum. He testified that he could perceive no objective evidence of injury at the time he examined Mrs. Peroti two months after the accident. He thought her symptoms were "magnified" and she had a low pain threshold, but that in view of the history she gave and the hospitalization it was fair to conclude she had some degree of soft tissue injury in the lower back and pelvis.

Appellee Pompey contended that Mrs. Peroti suffered no actual injury from the accident. Appellant both in a pre-trial deposition and on cross-examination at trial related a rather bizarre string of previous injuries and occurrences. Mrs. Peroti testified she had contracted arthritis in her left shoulder while standing guard duty in the army. Also during her stint in the armed services she said she had been kidnapped. She said she had been involved in two separate bus accidents in New York City, one in 1958 in which she injured her head and back; and another in 1959 which re-injured her head and aggravated the back injuries. She testified she had received medical treatment for those accidents, including hospitalization and wearing of a back brace. In 1962 she related a detective had beaten her severely and kicked her. She also reported that at some unspecified time in Philadelphia two uniformed policemen had robbed her and knocked her to the ground causing injury to her left knee. She claimed that automobiles had twice tried to run her down, causing her to jump out of the way and further hurt her back. Mrs. Peroti testified she was receiving a government pension for not "facing facts to the truth." She admitted having been treated by Dr. Caguin before the accident, but denied any of that treatment was for back ailments.

Appellees presented evidence to show that Dr. Caguin had treated Mrs. Peroti on four occasions previous to the accident and at least two of these visits were for leg, neck or abdominal pain. Mrs. Peroti never gave him any medical history which indicated she had earlier back injuries.

668

Dr. Caguin on cross-examination also said that the fractured rib revealed by an X-ray the day of the accident could have occurred as much as two weeks before and the picture would have still looked the same. That same X-ray report showed "residual radiopic medium" in Mrs. Peroti's spinal column. Dr. Caguin stated this indicated a milogram X-ray "tracing," used in spinal injury cases, had been performed earlier. Dr. Legum, the examining physician for appellees Yellow Cab and Williams, indicated that Mrs. Peroti gave him a history which attributed her difficulties to the car collision without notation of any other trauma to her back.

At the close of all the evidence Judge Jones decided plaintiff had shown conclusively that defendant Pompey violated the "boulevard law," Code (1957, 1967 Repl. Vol.), article 66½, section 233, and that this violation was a cause of the accident. There being no evidence of contributory negligence on plaintiff's part, Judge Jones ruled Pompey was negligent as a matter of law. Without deciding the question we shall assume this conclusion of Judge Jones was proper.[1] If error exists it is in appellant's favor on this point and she has no right on appeal to complain. However, Judge Jones went further and in her formal verbal ruling granted plaintiff's motion for a directed verdict "that Pompey was *liable*." The clerk, in accordance with Maryland Rule 522 c, made a docket entry that read "verdict in favor of plaintiff against defendant Robert Lee Pompey under instruction of the court *as to liability only*" (emphasis supplied). We conclude this was error. In *Richardson v. Boato*, 207 Md. 301, 114 A. 2d 49 (1955) there was a negligence action for injuries allegedly suffered in an automobile collision. The negligence of defendant was apparent, but there was sharp dispute over the extent and cause of plaintiff's

---

1. The "boulevard law" has been held to be applicable whether the vehicle on the favored highway was proceeding forward or backing-up. See Roy v. United Gas Corporation, 163 So. 2d 587 (La. 1964), cert. den. 165 So. 2d 485, 246 La. 593 (1964). In any case backing-up on a street or highway is not *per se* negligence. McCann v. Crum, 231 Md. 65, 188 A. 2d 537 (1963).

injuries. Plaintiff requested an instruction by the court that "defendant was *liable* as a matter of law, leaving only the amount of damages for the jury" (emphasis supplied). We upheld the refusal of the trial court to give such an instruction. Judge (now Chief Judge) Hammond speaking for the Court in that case clearly delineated the distinction between *negligence* and *liability*. Even if the negligence of the defendant as a matter of law exists, this conclusion alone will not authorize the granting of a directed verdict in favor of the plaintiff on the question of liability. Liability is an obligation to pay, and arises only when all essential elements of an action are established. The basic elements necessary for a cause of action in negligence are a duty or obligation which the defendant is under to protect plaintiff from injury, a failure to discharge that duty, and actual loss or injury to the plaintiff proximately resulting from that failure. W. Prosser, *Handbook of the Law of Torts*, section 30, 146-47 (3d ed. 1964). Direction of a verdict that liability exists is improper unless all elements, including damages, are so convincingly shown that rational minds could not differ as to their existence. *Richardson v. Boato, supra* at 305-07.

Appellant Peroti contends that she was nevertheless entitled to a directed verdict, and so we must examine what standard of proof is necessary to achieve this result. In *Dunstan v. Bethlehem Steel Co.*, 187 Md. 571, 578, 51 A. 2d 288 (1947) the Court there distinguished "between (a) uncontradicted evidence which a jury might disbelieve and (b) uncontroverted or undisputed facts, which present only a question of law." Only in the second case is the court justified in removing an issue from the jury's consideration. Our understanding is that for evidentiary facts and inferences to be "uncontroverted or undisputed" there must be either actual or constructive acquiescence in their truth on the part of all affected parties.

In the light of these principles it is obvious that Judge Jones could not properly have granted a verdict for plain-

tiff as to liability, even assuming as we have that her decision was correct on Pompey's responsibility for the collision.[2] Appellees disputed that Mrs. Peroti received any injuries or loss from the accident. They argued that the impact of the collision was very light, that Mrs. Peroti did not claim to have been hurled against any part of the cab, and that even if she did have a back injury it was pre-existing and not induced by the accident. They successfully showed that Mrs. Peroti failed to mention to her doctors *any* of the many claimed incidents before the accident which could have had significant relation to a complaint of back injury. The jury evidently assessed plaintiff's credibility unfavorably and rejected her contentions and the opinions of her expert witness, even as to the cause of her broken rib, her most objective injury. Credibility of a witness' testimony is peculiarly the province of a jury and not subject to our review. Even an assertion that their decision is against the manifest weight of the evidence may not be reviewed by this Court, such assertion being properly addressed to the sound discretion of the trial court by way of motion for a new trial.

Appellant further contends that if we do not agree she deserved a directed verdict, the judgment must still be reversed because the jury's verdict was in disregard of the trial judge's instructions. We think it abundantly clear that this is not the case. From a reading of the instructions as a whole we conclude that Judge Jones made it clear to the jury that the question of damages was entirely for its determination. Even though erroneous in form, what she did had the ultimate effect of granting a preemptory instruction that defendant Pompey was negligent, and submitting to the jury two issues, namely; do you find actual damages to the plaintiff resulting from this accident, and if so in what amount? By its verdict for the defendants the jury implicitly found no damages,

---

2. What we have said is of course not meant to imply that the full amount of the damages must be agreed upon by the parties. If negligence is established and some injury conceded, but the amount disputed, a verdict on liability may be directed, leaving for determination by the jury the amount to be awarded.

a finding which resolved the ultimate issue of liability. We note that even when a directed verdict is granted, the amount of recovery may be quite minimal. *See Grabner v. Battle,* 256 Md. 514, 260 A. 2d 634 (1970). But as we have stated, actual damages are a prerequisite for liability in negligence cases, and nominal damages, or "technical liability" do not exist.[3] W. Prosser, *Handbook of the Law of Torts, supra* at 146. With a finding of no damages, the judgment ultimately entered "in favor of all defendants for costs" was a proper one.

Appellant argues that the judgment for appellees Williams and Yellow Cab Company should also be reversed. She recognizes that having taken no exceptions to the charge in the trial court, she can raise no question of the adequacy of those instructions here. However, she bases the argument for reversal on the "proved" disregard of the trial court's instructions as to Pompey, and asserts that a jury verdict which disregards instructions as to one defendant is tainted, and no part of it should be allowed to stand. The case against Williams and the Cab Company went to the jury on both negligence and damages. The general verdict for all defendants conclusively exonerated these two. Because we have concluded that whatever error concerning Pompey existed in this case was cured by the jury's action, we can perceive no merit in appellant's "guilt by association" argument concerning Williams and his Company.

> *Judgment affirmed. Costs to be paid by appellant.*

---

3. Nominal damages, however, may properly be awarded in certain classes of tort actions. 22 Am. Jur. 2d, Damages §§ 8, 10 (1965).