## WALTER O. LITTLE ET AL. *v.* EVELYN DUNCAN ET AL.

[No. 330, September Term, 1971.]

*Decided December 22, 1971.*

The cause was argued before ANDERSON, THOMPSON and GILBERT, JJ.

*William O. Goldstein* for appellants.

*William Clague,* with whom was *Francis C. O'Brien* on the brief, for Evelyn Duncan, one of the appellees. *Paul M. Parent,* with whom were *Parent & Kelly* on the brief, for Theodore L. Murphy, the other appellee.

GILBERT, J., delivered the opinion of the Court.

Walter O. Little (Little) and Arthur Taylor (Taylor), appellants, were passengers in a motor vehicle operated by Theodore L. Murphy (Murphy), appellee, when it was involved in a collision with an automobile operated by Evelyn Duncan (Duncan), appellee. At the trial of appellants' suit against Murphy and Duncan, the jury rendered verdicts for both drivers as against passengers-appellants. A motion for a new trial, requested by appellants, was denied by the trial judge.

Appellants attack the judgment of the trial court on a tripartite basis:

I. A denial of a fair and impartial trial by, what they believe to be, damaging prejudicial statements and conduct of counsel for the appellee Duncan.

II. The commission of reversible error by a refusal of the trial judge to instruct the jury that "either one or the other, or both of the defendants must be negligent."

III. Additional reversible error committed by the trial judge in refusing to allow the appellants' attorney to argue the question of "permanent disability" to the jury.

Duncan testified that on August 10, 1968, it was raining heavily and she was operating a motor vehicle in an easterly direction on Sheriff Road in Prince George's County, and intended to turn left at Harvey Drive. She stated that she had stopped on Sheriff Road close to the center line and had turned on her left blinker light when she was struck in the left rear fender by a motor vehicle operated by Murphy. The appellants were in the Murphy car. Little was seated in the right rear of Murphy's car and Taylor was in the right front. Duncan stated that at the time she stopped her motor vehicle she saw the lights of another car approximately 100 yards away and that she still saw the lights when she started to make her turn into Harvey Drive. Murphy related to the jury that he was operating his vehicle in an easterly direction on Sheriff Road and as he came over the crest of a hill he saw the Duncan vehicle in the left lane. He said that Sheriff Road accommodates two lanes of traffic on one-half of the road, that is to say, it would accommodate four lanes of traffic in total, two east bound and two west bound, divided by a center line. Murphy said that Duncan was to the right side of the roadway and stopped, and just as he was ready to pass her she pulled into the left lane. At the time she pulled into that lane he was approximately 20 to 25 feet from her. The vehicles collided. Murphy also stated that his speed at the time was 25 to 30 miles per hour. Little told the jury that he observed the Duncan car slow down and pull to the right as the Murphy vehicle approached it. He then said that Duncan pulled to the left and there was no turn signal operating on the Duncan vehicle. He corroborated Murphy's estimate of speed. Taylor's testimony was similar to that of Little.

Little testified as to the injuries he sustained from the impact. Little stated that following the accident his neck and the upper part of his back and right knee were "stiff". He was treated by a duly licensed chiropractor. He lost no time from work. His complaint at the time of the trial was that he had to lie down in a certain manner.

Taylor informed the jury that he had injured his neck and shoulders and he was treated by the same chiropractor as Little. Taylor likewise lost no time from work, and his complaint at the time of the trial was that his neck still pained him sometimes when he lay down to rest and when he arose in the morning.

In opening statement counsel for Duncan commented upon a previous trial wherein the appellee Murphy had been the plaintiff and the appellee Duncan the defendant. Duncan's counsel told the jury that Duncan "successfully defended her claim, defended her case against Mr. Murphy, but in that trial, and we have excerpts of proceedings, a specific question was asked of Mr. Taylor, 'Were you injured in this accident?' to which he denied he was injured. Was Mr. Little injured in this accident? They denied they were injured." No objection was interposed at this point.

Duncan was called as an adverse witness by the plaintiffs below (appellants here), and on cross-examination was asked whether or not she recalled the trial of Murphy's claim against her. She responded i⌐     ⌐rmative. The following then transpired:

"Q. Do you recall, do you not, that both Mr. Little and Mr. Taylor both testified as witnesses for Mr. Murphy in this case, do you not?

A. Yes.

Q. Do you recall then being asked a question whether they were or were not injured?

A. Yes.

Q. Do you recall what their answer was under oath on the stand?

A. Yes.

Q. What was it?

A. They did not get hurt.

MR. GOLDSTEIN: Objection. Move it be stricken, your Honor.

THE COURT: She was here. She heard the

testimony. That would be original testimony. The objection is overruled.

BY MR. O'BRIEN:

Q. Now, do you also remember—

THE COURT: I expect you to follow that up, though.

MR. O'BRIEN: Oh, I will, Your Honor. As a matter of fact, I'm going to offer this total thing into evidence.

THE COURT: I don't want the total thing in.

MR. O'BRIEN: It's just about that testimony.

THE COURT: Yes."

\* \* \*

"MR. O'BRIEN: \* \* \*. The question was that I was asking at the particular time Mr. Taylor this question, 'It is true that you were not injured?' The answer was, 'yes.' Do you remember that answer?

A. Yes.

MR. O'BRIEN: All right. 'It is also true that Mr. Little was not injured, isn't that true?' This is Mr. Taylor. The answer was, 'yes.'

MR. GOLDSTEIN: Objection.

WITNESS: Yes."

After an exchange between counsel and the court, Duncan's attorney withdrew that portion of the questions dealing with Taylor's response relative to Little's injuries.

In the cross-examination of Murphy, Duncan's attorney again alluded to the previous suit. Appellants' attorney requested the court to instruct the jury to disregard the comment.

"Q. You lost the case, didn't you?

MR. GOLDSTEIN: Objection.

MR. PARENT: Objection.

THE COURT: Sustained.

MR. GOLDSTEIN: Your Honor, I wish you would instruct the jury.

THE COURT: * * * you will disregard that completely. That has nothing to do with this case."

Counsel for appellants then stated:

"Your Honor, further I wi.h you would tell him my clients were witnesses, so I think he tried to infer to the jury his client was in the right, and I think the whole thing was improper.

THE COURT: I told them to disregard it completely. I think they know what to do.

BY MR. O'BRIEN:

Q. You say that you were —

THE COURT: They are probably the only ones left that are not confused. I say the jury is probably the only ones left in the courtroom that are unconfused."

The transcript of the Murphy v. Duncan trial was

proffered at the close of the evidence in the case, but upon objection was not received. Out of the presence of the jury it was said:

"MR. O'BRIEN:    I got enough out of it anyhow.

THE COURT:    You already got it in front of the jury."

During closing argument to the jury, Duncan's attorney referred to the sole medical witness, a chiropractor, as a "quackpractor". The court promptly informed the jury, "I think it is a chiropractor, members of the jury. He said he was a chiropractor."

We think it significant to note that not at any time did appellants request or seek a mistrial. Here, appellants argue that, "A mistrial is always a victory for the insurance company which can still hold its money and face the impecunious attempt to bring medical witnesses to another trial." We are unpersuaded by this contention. We perceive in this record a question of trial tactics. Appellants' experienced counsel apparently chose not to seek a mistrial, but, on the contrary, to proceed with the case in the belief that his clients' cause would ultimately prevail. As so aptly stated by Judge Powers for this Court in *Sobus v. Knisley*, 11 Md. App. 134, 142 (1971):

> "The dilemma of counsel * * * is apparent. They were required to judge which would cause more harm to the defendant; * * *. When this tactical decision was made, the die was cast. If it was detrimental, appellant may not complain."

In *Ferry v. Cicero*, 12 Md. App. 502, 280 A. 2d 37 (1971), this Court held that notwithstanding the fact that a mistrial would have been warranted in view of the improprieties of defense counsel and that the failure to have granted the mistrial would have been an abuse of discretion, we could not reverse where no mistrial had in fact been requested. We do not herein fault the appellants' counsel for not moving for a mistrial because as stated by Judge Powers in *Ferry, supra*:

> "We fully understand the dilemma of opposing counsel, requiring instant evaluation of several alternatives. A mistrial would require a new trial, with its attendant delay and expense. An interruption resulting in any action by the judge short of a mistrial may well serve only to emphasize and thus intensify the harm."

However, inasmuch as no motion for a mistrial was made in the instant case, we see nothing for us to review. Rule 1085.

In so holding, we do not imply that a trial by jury should be allowed to degenerate into the long abolished "trial by combat." We think it incumbent upon the trial judge to take steps to assure a fair and impartial trial to the participants in the litigation. Zeal in advocacy is commendable, but zeal, even in advocacy, without bounds may be contemptuous and disruptive.

> "Zeal is very blind, or badly regulated, when it encroaches upon the rights of others." [1]

In *Ferry v. Cicero, supra,* we also said:

> "* * * trial judges should have no reluctance to exercise, *sua sponte* if necessary, the power they have to maintain strict control over the trial, 'to protect the fair and unprejudiced workings of the judicial proceedings.' "

## II

In the instant case the trial judge instructed the jury that:

> "If you find that neither one of the defendants are guilty of negligence, that ends the case, because that would be a failure of primary proof of negligence. But if you find, however, that one or both are guilty of primary negli-

---

1. Believed to be from "Reflexiones Morales Sur le Nouveau Testament" (1687) by Pasquier Quesnel (July 14, 1634—December 2, 1719).

gence, I instruct you as a matter of law that you cannot find from the evidence that the passengers of the automobile are guilty in any manner of contributing to the causation of the accident."

Appellants excepted to the above quoted portion of the judge's charge by saying:

"Our exception to that instruction is that one of the defendants must be negligent, that there was no testimony of an unavoidable accident or an emergency situation. Therefore, either one defendant or the other defendant or both defendants must be negligent."

Had the trial judge modified his charge so as to accommodate the exception of the appellants, he would, in effect, have been granting a directed verdict in favor of the appellants, leaving for the jury to determine which of the appellees (if not both) was responsible for the happening of the collision.

It is axiomatic that the mere happening of an accident does not give rise to a presumption of negligence, *Finney v. Frevel,* 183 Md. 355, 362 (1944); *Bohlen v. Glenn L. Martin Co.,* 193 Md. 454, 463 (1949); *Schaub v. Community Cab, Inc.,* 198 Md. 216, 225 (1951), and that the burden of proof rests upon the plaintiff to demonstrate that a defendant or defendants were guilty of negligence directly contributing to the happening of the accident. *Finney, supra; Larsen v. Romeo,* 254 Md. 220, 225 (1969); *Mazer v. Stedding,* 10 Md. App. 505, 506-507 (1970); *Armstrong v. Johnson Motor Lines,* 12 Md. App. 492, 500 (1971).

It has also been held that:

"* * *. Evidence of negligence does not impose legal liability. The negligence must have caused the injury. 'The fact to be proved is, of course, not merely the existence of negligence.' 'The mere existence of negligence at the time and place of an injury does not give a right of action. The injury must have been caused by it.'" *Finney v. Frevel, supra,* at page 362.

It is entirely possible that the jury might have concluded that the appellants did not meet the burden of proof and therefore the jury's collective mind was in a state of equipoise; or the jury may have found negligence on the part of one or both drivers but did not attach credibility to the appellants' testimony relative to their injuries, nor to the testimony of the chiropractor. If the jury found negligence, but believed neither the appellants nor the chiropractor, they would be justified under *Finney v. Frevel, supra,* in concluding that the injuries complained of were not caused by the accident and in finding a verdict in favor of the appellees. *Peroti v. Williams,* 258 Md. 663, 670, 267 A. 2d 114 (1970) ; *Boone v. Brown,* 12 Md. App. 619, 623, 280 A. 2d 51 (1971) ; *Richardson v. Boato,* 207 Md. 301, 307, 114 A. 2d 49 (1955).

The jury was not required to believe the appellants, as the credibility of a witness' testimony is peculiarly within the province of a jury and not subject to review on appeal, even though the decision may be against the weight of the evidence. *Peroti v. Williams, supra.*

### III

During his charge to the jury, the trial judge halted and called counsel to the bench where he informed the appellants' attorney that the chiropractor did not prove the "life expectancy" of the appellants, concluding that, "You can't go into permanency. * * * I can't see how you can award compensation for it unless you know how long he is going to live." The appellants promptly excepted, pointing out that testimony had been offered by the chiropractor to the effect that Little had sustained a 15% permanent partial disability of the neck and 10% permanent residual disability of the dorsal spine, and that Taylor had a 15% permanent residual disability of the neck and upper back.

The trial judge was of the opinion that counsel could not argue the question of permanency to the jury in view of the fact that the life expectancy of the appellants had not been proved. We think the trial judge's ruling erro-

neous. The chiropractor had testified as to permanency of disability present in appellants. The ages of the appellants were in evidence and the time-tested argument of "biblical" life expectancy (three score and ten years) could have been made to the jury. Juries do not live in vacuums and are certainly aware of the average life expectancy. We think a rule of common sense would have prevailed in the jury's deliberation had the matter been presented to them. Under the facts here, however, we must conclude, in view of the jury's verdict for the appellees (defendants below), that the error was harmless. *Barone v. Winebrenner*, 189 Md. 142, 146 (1947) ; *Biggs v. Hutzler Bros. Co.*, 181 Md. 50, 56 (1942). Appellants failed to clear the burden of proof hurdle and satisfy the jury as to the appellees' negligence. Inasmuch as the jury found that the appellants were not entitled to recover anything, they would not be entitled to a reversal, even though there was error in that part of the instructions touching only the measure of damages. *Walker v. Rogers*, 24 Md. 237, 250 (1866).

> *Judgment affirmed.*
> *Costs to be paid by appellants.*