739 A.2d 924

**Bonnie Lee HURT**

v.

**Sedrick F. CHAVIS, et al.**

**No. 5377, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Oct. 28, 1999.

Ronald A. Baradel (Council, Baradel, Kosmerl & Nolan, P.A., on the brief), Annapolis, for appellant.

Michael H. Burgoyne (Maureen L. Rowland, on the brief), Towson, for appellees.

Argued before WENNER, SALMON and THIEME, JJ.

THIEME, Judge.

Appellant appeals from the judgment of the Circuit Court for Baltimore County and requests a new trial on the issue of damages arising from a personal injury action. Appellant presents the following issue for our review:

> Whether, in light of appellees' stipulation and the entry of judgment as to liability in favor of appellant at the close of the proceedings, the trial court erred in requiring the jury to then consider the issue of probable cause in its deliberations.

We answer "no," and explain.

## Facts

This case arose from an April 22, 1993, automobile accident in Baltimore City. Appellant Bonnie Lee Hurt was a passenger in a Jeep Grand Wagoneer being driven by Dan Beall, her then-husband. Appellee, Cedric Chavis, in the course of his employment with Cedric Chavis Construction Company, was traveling behind the Jeep and rear-ended it. Police respond-

ed to the scene, but did not write a report. Both vehicles were operable after the accident, although Beall and Hurt both testified that the impact was substantial and Beall estimated that Chavis was traveling between 40 and 50 miles per hour immediately prior to impact. Chavis did not testify.

At the time of the accident, Hurt was on her way to see Dr. David Buckholtz at Johns Hopkins Hospital for an independent medical examination in connection with a "slip and fall" incident in September 1989, wherein Hurt severely injured her neck and back. Since that date, she had been treated for those injuries and had not worked.[1] Hurt appeared for her examination ten minutes after the auto accident and performed all the tests asked of her without complaint, including bending over and touching the floor with the palms of her hands. Hurt did not tell Dr. Buckholtz that she had just been in a car accident.

After her examination with Dr. Buckholtz, Hurt drove Beall to the emergency room of the Anne Arundel Medical Center in Annapolis because of the pain he suffered after the accident. Hurt did not seek or receive any treatment at that time.

Hurt's medical history since the 1989 slip and fall is extensive and has little relevance to the issue we review in this appeal. Suffice it to say, significant testimony was adduced through depositions and at trial that, despite numerous visits with physicians who were treating her for pain and injuries in connection with the slip and fall, Hurt did not mention the automobile accident to any Maryland physician until December 1993, when she told Dr. William Tham. The first record which Dr. Tham had of an April 1993 accident is contained in a report dated April 3, 1995.

A lawsuit arose out of the 1989 slip and fall accident. In her answers to interrogatories in that suit, Hurt claimed that

---

1. Hurt was a real estate agent and had worked 80–90 hours per week prior to the 1989 slip and fall. The incident occurred in a hotel where Hurt was attending a real estate seminar.

the accident left her permanently disabled and unable to work. Dr. Tham had opined in a June 1992 record that Hurt would never return to work due to the injuries she sustained in the 1989 accident. The 1989 lawsuit was settled in August or September 1993. Over $100,000 in medical expenses accrued in the period after the April 1993 accident. Most of those medical expenses were incurred subsequent to August 1993. Future medical expenses were estimated at trial to be approximately $300,000.

Hurt endured multiple surgeries both before and after she told Dr. Tham about the automobile accident. Following one surgery in May 1995, Hurt lost bowel and bladder functions and now must be catheterized every three or four hours each day and will have to be so treated for the rest of her life.

Eventually, after the multiple surgeries did not alleviate her pain, Hurt consulted Dr. Richard North, a neurologist and pain management specialist. Dr. North recommended the implant of an electrical stimulation device to control pain. Hurt must now wear an external apparatus connected to the implants in her spine for pain control. It is expected that she will wear this for the rest of her life.

During the course of her treatment, numerous radiological studies were performed on Hurt. Three of her doctors testified that the symptoms Hurt complained of were the result of a new injury she sustained during the April 1993 auto accident. Another doctor who reviewed all of the radiographic studies and Hurt's medical records concluded that her complaints were the result of a combination of normal aging and progression of the 1989 injury. This conclusion was based on the fact that no treatment could be documented as having been rendered to Hurt for six months after the accident, and there had been no change in her symptoms. This doctor was of the opinion that an aggravation of her pre-existing condition or a new condition would have surfaced within several days after the accident.

At the conclusion of Chavis's case, the court granted Hurt's motion for judgment on the issue of "liability." In addition to

other instructions, and upon Hurt's request, the court instructed the jury that it "[did] not have to decide the question of whether the defendants are responsible to the plaintiff," and instead "need only to decide the amount, if any, of damages" that should be awarded to the plaintiff.

The court further instructed the jury on aggravation of a pre-existing injury. Chavis requested instructions regarding causation and the ability of the jury to find that no injury was caused by the accident. Because the court agreed that the first question to be answered on the verdict sheet was whether the accident caused an injury, the court declined to give this instruction.

After closing arguments, the court provided the jury with a verdict sheet that included two questions. The first was: "Do you find by a preponderance of the evidence that Bonnie Lee Hurt sustained an injury as a result of the April 22, 1993, automobile accident?"

The second question regarded the measure and award of damages. The jury answered the first question "no" and found that Hurt did not sustain an injury as a result of the 1993 accident. Thus, the jury did not reach the second question.

### Discussion

### I.  Standard of Review

■   Appellant contends that the first question on the verdict sheet, whether she sustained any injury as a result of the automobile accident, was erroneous in light of the previously granted motion for judgment as to defendant's "liability." [2] As this determination is a question of law, we review the issue *de novo. See, e.g., Inlet Associates v. Harrison Inn,* 324 Md. 254, 264–66, 596 A.2d 1049 (1991); *Maryland National v. Parkville Federal,* 105 Md.App. 611, 614, 660 A.2d 1043 (1995).

---

2.  Appellant does not contend, however, that the causation question on the verdict sheet was erroneous in itself.

## II. *Stipulation*

Throughout the trial, defense counsel represented to the court that he was "admitting responsibility" for the April 1993 auto accident and repeatedly stated that the case was about "damages only." Confusion arose, however, when it became apparent to the court and to plaintiff's counsel that defense counsel was not conceding that his client caused appellant's injuries, but that his concession was only to "liability" or "negligence." The court granted plaintiff's motion for judgment as to defendant's "liability" and submitted both the questions of causation and damages to the jury. Appellant appeals from the court's decision to submit the causation question to the jury, contending that the jury "should have been *precluded*" from considering causation at all. We disagree.

Before the trial began, defense counsel told the court that "[w]e'll be admitting liability in this case." Shortly thereafter, he modified his representation and stated, "Actually, I'd rather prefer it be called that we'll be admitting responsibility for the happening of the accident on April 22 nd." The second time counsel raised this issue was in the context of a motion *in limine* "to keep the conviction of my client from this case." At that point, counsel again stated, "We're going to be admitting liability." The third time the issue arose came when defense counsel requested that the court excuse his clients' presence during a portion of the trial. Again counsel stated, "This case is about damages, not liability."

At the conclusion of the trial, the court attempted to clarify the defense position with respect to liability. The following discussion ensued:

THE COURT: ... Exactly what did you stipulate to as to liability?

MR. WHITWORTH [plaintiff's counsel]: I stipulated that—

THE COURT: Well, let me ask you another question. Is there any reason why there's anything for [the jury] to decide other than what, if any, damages there are?

MR. BURGOYNE [defense counsel]: The—the issue as to damages is quite clear from the stipulation, that we may have been a cause of the accident. Okay? But liability is a little bit different question. Liability assumes causation. This whole case is about causation.

THE COURT: Wait a minute. You're a cause of the accident, but you're not what?

MR. BURGOYNE: Cause of the injuries. And so, I think that—

THE COURT: So what did you stipulate to?

MR. BURGOYNE: That we acknowledge that we caused the accident of April 22 nd, 1993.

THE COURT: Okay.

MR. BURGOYNE: And perhaps the Court is making reference to our verdict sheet.

THE COURT: Uh-huh.

MR. BURGOYNE: Which, the first question I would propose in this case is, did the April 22 nd, 1993 motor vehicle accident cause any injuries? If the answer is yes, then they go on to determine what injuries. If they say no, then there's no need to even discuss economical loss, medicals, et cetera.

THE COURT: It's considerably less than a stipulation that I thought I heard at the beginning of the case.

MR. WHITWORTH: You're [sic] Honor, we're in the same position, and that's why—if they don't think any damages were caused, they can put zero in any category, or all categories. But to add that extra hurdle—

THE COURT: That's how I thought we were going to approach it actually. I thought you were going to argue that, sure, there was an accident, but it didn't cause anything, so zero damages here.

\* \* \*

MR. BURGOYNE: We'll talk about damages in the jury instructions, but in every element of damage, Your Honor, it's what, if any, what, if any, what, if any.

■■■■■■■■■■■■■

\* \* \*

MR. WHITWORTH: Your Honor, if I may, we would certainly oppose putting anything in there about liability or negligence, because that would be confusing since it's not—

THE COURT: Well, there's not a—there's not an issue of negligence, is there? I assume you're conceding negligence?

MR. BURGOYNE: Well, Your Honor,—

THE COURT: We're slipping again, aren't we?

MR. BURGOYNE: Well, it's that, when I took law school classes on negligence, they told me that causation [is] intertwined in the whole idea of negligence. And in this case, causation is our entire case. So, I think that I can stipulate that we caused the accident.

THE COURT: Okay.

MR. BURGOYNE: That our car, through no fault of Mrs. Hurt,—okay?—struck her vehicle. But that's not saying the same as that we admit negligence, which is causation, damages, that we admit liability.

THE COURT: What you've done is essentially, is admit that an accident happened?

MR. BURGOYNE: And it was our fault.

THE COURT: Well, now you've lost me again.

MR. WHITWORTH: Your Honor, when he closes, I want to move for a directed verdict as to liability, and then have a sample verdict sheet.

On appeal, appellee "concedes that Chavis'[s] counsel, at times, was less than legally precise when referring to the issues of liability and negligence." Counsel's statements went beyond imprecision as he appeared to waffle on whether he was admitting "liability," "negligence," "damages," or "causation." Counsel was not, however, substantively changing his position; rather, he seemed to have been attempting to present a consistent position to the court, but in doing so was interchanging legal terms that are simply not interchangeable. Instead of getting hopelessly entangled in defense counsel's

erroneous terminology, we will consider his position in its entirety, and in the context of the trial, to determine the pivotal question of whether he admitted negligence or liability, and the significance of each. To do so, we must first examine the distinction between the two concepts.

### III. Negligence vs. Liability

This Court and the Court of Appeals have decided a number of cases directly addressing this issue and have attempted to articulate the distinction between liability and negligence in a clear and concise manner. As the Court of Appeals explained in *Richardson v. Boato*, 207 Md. 301, 306–07, 114 A.2d 49 (1955):

> [T]he negligence of the appellee gave no right of action to the appellant unless that negligence injured or harmed her. The appellant, to have been entitled to an instruction that the appellee was subject to liability to her, must have shown uncontroverted causal connection between the negligence and the injury or harm to her. Here, the facts which constituted negligence were uncontroverted, but the facts of the connection between that negligence and the claimed harm were sharply in dispute.

> The appellant, if she had specifically so requested, may well have been entitled to have the jury instructed that there was negligence on the part of the appellee and lack of contributory negligence on her part, leaving to the jury to decide whether the stiff neck or the arthritis, or both, resulted from that negligence, and, if so, the damage suffered as a result.

> \* \* \*

> If the appellant had requested an instruction that the appellee was negligent and the appellant free of negligence, the trial court, after so instructing, could have required a special verdict as to each of the claimed injuries and the resulting damages, ... but the appellant did not so limit her request. She asked that the jury be instructed that the defendant was liable to her for his negligence and that the

jury determine only the amount of the damages. It is plain that she was not entitled to the instruction she asked.

■ Clearly, liability requires more than a finding (or admission) that the defendant was negligent. The Court of Appeals stated in *Peroti v. Williams*, "[l]iability is an obligation to pay, and arises only when all essential elements of an action are established.... Direction of a verdict that liability exists is improper unless all elements, including damages, are so convincingly shown that rational minds could not differ as to their existence." 258 Md. 663, 669, 267 A.2d 114 (1970) (*citing* W. Prosser, *Handbook of the Law of Torts*, section 30, 146–47 (3d ed.1964); *Boato*, 207 Md. at 305–07, 114 A.2d 49).

Defense counsel's repeated statements that this case was about damages, but not about liability, were simply illogical in light of *Boato* and *Peroti*. If damages are in controversy, liability is not admitted. Therefore, regardless of the legal terms he used, defense counsel did not concede liability.

This conclusion is further supported when we consider the trial in its entirety. The emphasis throughout the case "was on the necessity of determining whether there was a causal connection between the accident and the injuries claimed." *Boato*, 207 Md. at 307, 114 A.2d 49. Even plaintiff's counsel, during closing argument, recognized that the issue of causation was in dispute: "Now, it happens the liability has been already addressed and admitted as to causing the accident by the defendants.... But we have to prove what damages causally flow, were caused by the automobile accident...." Thus the entire trial, including closing argument of counsel, focused on whether the April 1993 automobile accident caused injury to the plaintiff, or whether the injuries she complained of were actually the result of the 1989 slip and fall incident.

Even if defense counsel had consistently maintained that he admitted *negligence*, the confusion would not have been mitigated. At its most basic level, negligence consists of four elements: duty, breach, causation, and damages. Counsel consistently admitted "responsibility for the accident" and that Chavis "caused the accident." Counsel also consistently main-

tained, however, that "[t]his whole case is about causation," and that Chavis was not the "[c]ause of [Hurt's] injuries." Consequently, he appears to have admitted "negligence" as to the car accident only: "That our car, through no fault of Mrs. Hurt, . . . struck her vehicle." In essence, counsel admitted the duty, breach, and causation elements of negligence *as to the impact between the two vehicles.*[3] Counsel did injuries. (Indeed, the primary focus of the trial was on whether Hurt's injuries resulted from the car accident or the slip and fall years earlier.) Therefore, regardless of the legal label counsel attached, he did not admit negligence as to Hurt's injuries in this case. Considering the trial in its entirety, we find that defense counsel simply admitted responsibility for the car accident itself—not negligence or liability, both of which include causation and damages as well.

## IV. Jury Instructions and Verdict Sheet

The court's jury instructions and the verdict sheet were consistent with the conclusion that counsel was not conceding negligence or liability as to Hurt's injuries. The court instructed the jury as follows:

> In this case, you do not have to decide the question of whether the defendants are responsible to the plaintiff. You need only to decide the amount, if any, of damages the plaintiff should be awarded.

The court's qualification that damages, "if any," may be awarded left unanswered the question of whether the plaintiff sustained damages as a result of the accident at all, which goes to the heart of the causation issue. *See Lyon v. Campbell,* 120 Md.App. 412, 443, 707 A.2d 850, *cert. denied, MQI v. Lyon,* 350 Md. 487, 713 A.2d 980 (1998). In fashioning the instruction in this manner, the court avoided the pitfalls of

---

3. We note that even admitting these three elements is not sufficient to concede negligence as to the accident without also establishing the fourth element—that some damage (*i.e.,* to the vehicles) resulted. As we will discuss further in this opinion, if the *amount* of damages is conceded, then liability is also admitted.

counsel's confused representations regarding the negligence/liability distinction.

The court then submitted a verdict sheet to the jury that contained two questions. The first question asked whether the plaintiff sustained any injuries as a result of the April 1993 automobile accident; the second question addressed the award of damages. Appellant argues that the court erred in submitting the causation question to the jury on the verdict sheet *because it did not comport with the judgment as to liability.* Appellant is correct that, if judgment is entered as to liability, the only issue that should go to the jury is the amount and extent of damages, if any, not causation. As we will discuss, however, the judgment as to liability was improper in this case.

### *V. Entry of Judgment as to Liability for Plaintiff*

█ The propriety of the court's entry of judgment as to liability of the defendant was not challenged at trial and is not raised in this appeal. Notwithstanding this fact, "Maryland Rule 8–131(a) confers discretion upon the appellate courts to decide issues raised on appeal but not raised below. It also extends to circumstances when the parties have not even raised the issue on appeal." *Braxton v. State,* 123 Md.App. 599, 632, 720 A.2d 27 (1998); *see also Booth v. State,* 62 Md.App. 26, 38, 488 A.2d 195 (1985), *aff'd,* 306 Md. 313, 508 A.2d 976 (1986) ("whether to review an issue not raised and decided below is discretionary with the appellate court"). The rule provides, in pertinent part:

> Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

As we discuss below in greater detail, if we ignore the question of whether the judgment as to liability was proper, we will find ourselves in the undesirable position of potentially reversing and remanding this case so that the proper portion

of the court's actions comports with actions that we find were improper. Therefore, we will exercise our discretion under Rule 8–131(a) and address the propriety of the judgment, even though the issue was not raised by the parties.[4]

"In reviewing a trial court's grant of a motion for judgment in a jury trial, this Court must conduct the same analysis as the trial court, viewing all evidence in the light most favorable to the non-moving party." *Martin v. ADM Partnership,* 106 Md.App. 652, 657, 666 A.2d 876 (1995), *rev'd on other grounds,* 348 Md. 84, 702 A.2d 730 (1997) (*citing Cavacos v. Sarwar,* 313 Md. 248, 250, 545 A.2d 46 (1988); Md. Rule 2–519(b)). Thus, to determine whether the judgment as to liability was proper, we must consider "whether all elements, including damages, [were] so convincingly shown that rational minds could not differ as to their existence." *Peroti,* 258 Md. at 669, 267 A.2d 114 (*citing* W. Prosser, *Handbook of the Law of Torts,* section 30, 146–47 (3d ed.1964); *Boato,* 207 Md. at 305–07, 114 A.2d 49). Moreover, as we discussed in *Levin v. Arrabal,* "[i]f negligence is established *and some injury conceded,* but the amount disputed, a verdict on liability may be directed, leaving for determination by the jury the amount to be awarded." 11 Md.App. 89, 97, 272 A.2d 818 (1971) (emphasis added), *cert. denied,* 261 Md. 721, *cert. denied,* 261 Md. 726 (1971); *see also Peroti,* 258 Md. at 670 n. 2, 267 A.2d 114. In *Levin,* the Court observed that a directed verdict for the plaintiff on liability was proper "*because* there were conceded damages sustained by" the plaintiff. *Id.,* 11 Md.App. 89, 272 A.2d 818 (emphasis added).

---

4. We recognized in *Braxton* that "[t]here are a number of examples of cases in which our appellate courts have resolved an appeal on the basis of a legal issue that was never raised by the parties." 123 Md.App. at 632, 720 A.2d 27. *See, e.g., State v. Bell,* 334 Md. 178, 638 A.2d 107 (1994); *Taub v. State,* 296 Md. 439, 463 A.2d 819 (1983); *Robeson v. State,* 285 Md. 498, 403 A.2d 1221 (1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980); *Meyer v. Gyro Transport Systems, Inc.,* 263 Md. 518, 283 A.2d 608 (1971); *Pope v. Board of School Commissioners,* 106 Md.App. 578, 665 A.2d 713, *cert. denied,* 342 Md. 116, 673 A.2d 707 (1996).

██ In this case, neither damages nor injury (causation) was ever conceded. On the contrary, much of the trial was aimed at determining, through testimony and evidence including expert witnesses, whether Hurt's injuries resulted from the April 1993 automobile accident or whether they were preexisting injuries from the 1989 slip and fall. We find that rational minds could differ as to the elements of causation and damages. Thus, granting the motion for judgment as to liability was erroneous.

██ In light of this determination, we find ourselves in an absurd position. We are essentially being asked to reverse the trial court so that the verdict sheet, which was *proper,* may be modified to conform to the judgment of liability, which was *improper.* We decline to take this course of action. As we stated in *Pope v. Board of School Commissioners of Baltimore City,* 106 Md.App. 578, 591, 665 A.2d 713 (1995), *cert. denied,* 342 Md. 116, 673 A.2d 707 (1996), "an appellate court will affirm a circuit court's judgment on any ground adequately shown by the record, even one upon which the circuit court has not relied or one that the parties have not raised.... Therefore, it is within our province to affirm the trial court if it reached the right result for the wrong reasons." *See also Robeson v. State,* 285 Md. 498, 502, 403 A.2d 1221 (1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980); *Faulkner v. American Cas. Co.,* 85 Md.App. 595, 629, 584 A.2d 734 (1991).

██ What should have happened in this case *did* happen—the court submitted the questions of causation and damages to the jury in keeping with the defendant's stipulation, even if it did so on the erroneous basis of the judgment as to liability. "It would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground within the power of the appellate court to formulate." *Securities and Exchange Com. v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943); *see also Robeson,* 285 Md. at 502, 403 A.2d 1221.

We note that neither the court's ruling on the motion for judgment nor the discussion about the stipulation took place in front of the jury. Instead, the jury was only exposed to the court's instructions and the verdict sheet, which were consistent with the trial as a whole. The inclusion of the causation question on the verdict sheet did not constitute reversible error; on the contrary, it salvaged what otherwise may have been a reversible judgment as to liability.

### Conclusion

We hold that the trial court's decision to submit the question of causation to the jury on the verdict sheet was proper, and we affirm.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**