DₑMAY, INFANT, ₑₜ ₐₗ. *v.* CARPER

[No. 522, September Term, 1966.]

*Decided October 10, 1967.*

The cause was argued before HAMMOND, C. J., and HOR-
NEY, MARBURY, OPPENHEIMER and FINAN, JJ., and RUTLEDGE,

J., Associate Judge of the Fourth Judicial Circuit, specially assigned.

*Amos I. Meyers* for appellants.

*William A. Franch,* with whom were *Wray & Serio* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

The plaintiffs below, now appellants, having been given by the jury what they consider to be inadequate verdicts in a personal injury case, seek reversals on the ground that counsel for the defendant made prejudicial remarks in his opening statement.

Suit was brought by Joseph DeMay, who was then eighteen, for "serious, painful and permanent injuries" to his limbs and body and "his nerves and nervous system," and by his father (for loss of services and reimbursement of medical expenses) against the driver of a car that ran into the rear of the parked car in which Joseph was sitting.

Counsel for the defendant, from his investigation of the case, had become aware of what he considered significant facts and circumstances (as to which there later was testimony). Joseph DeMay's claim was that his back had been seriously injured by the accident. After the accident he had not gone to a hospital, had not complained of personal injury to the defendant on the day of the accident but, rather, of damage to his car. Both Joseph and his father said to the defendant they were glad no one was hurt in the accident. Joseph did not seek medical treatment for seven days and then did not go to the family doctor. When he became a client of his lawyer at the trial, that lawyer recommended as a doctor the son-in-law of the lawyer and also sent Joseph, on an appointment made by the lawyer, to another doctor. He had missed no time from school. He admitted having had difficulty with his back before the accident (as a result of a prior bicycle accident the defense claimed), and the defendant's doctor found no evidence of aggravation of a preexisting injury and no basis for Joseph's complaints, feeling, as

had a doctor for the plaintiffs, that he had suffered only a soft tissue injury in the accident. The only bill for medical services admitted in evidence was for $35.00.

With this background, counsel for the defendant said to the jury in his opening statement:

> "* * * I think there are some things that are definitely wrong with this case. I want, as the defense attorney in this case, to bring to your attention in my opening statement, certain points that I think it is imperative that you watch for as this trial develops. I ask you to observe first the date of this accident, what conversations transpired immediately after this accident and later on in the day. When did this plaintiff first consult a doctor? When did he seek subsequent physicians? Were any of these physicians family doctors? How did this plaintiff get to these doctors? Whose office arranged for these appointments? These are important factors for you to consider in this trial as to the weight that you place upon the testimony of the various doctors that are going to testify. It is important for you to consider when complaints of pain were first made by this plaintiff. Mr. Meyers has indicated, as I think our evidence will show, that this boy had a serious problem long before this accident occurred. I think the evidence will also show that this boy was having problems from time to time because of this condition prior to this accident. If from your assessment of the testimony in this case, which of course is evidence, that you should feel that a verdict is in order then the plaintiff, I frankly say to you the plaintiff should be reasonably and properly compensated, but I do say to you that this client of mine in this case should not be crucified in this trial because of—"

At this point counsel for the plaintiffs said:

> "If your Honor please, we object and I would like to make a motion at this time. I move for a mistrial.

I don't think that this argument is at all proper in an opening statement. There is no, and Mr. Franch knows there is no evidence, and there will be no evidence of any crucifixion and I think that that is a terrible thing for Mr. Franch to say at this time or at any other time in the trial of this case, and I ask for, make a motion for a mistrial."

To this, counsel for the defendant replied:

"Your Honor, in response to Mr. Meyers, may I say that it was very apparent from his opening statement that we are being charged and that he would like to give us credit for all the prior problems of this young man and I want to emphasize to the Court that we should not be held responsible for his prior conditions."

At this point Judge Childs said:

"No, I don't think that was the tenor of his arguments, Mr. Franch. He made it quite clear to the Jury that the Jury would be instructed on aggravation of a previous injury. I am sure and I know this Jury well enough that nobody is going to be crucified here. The motion will be denied for a mistrial but please refrain from any such graphic descriptions of Jury actions here. This Jury wouldn't do that under any circumstances."

And then counsel for the defendant added:

"Very well, Your Honor. Looking at the injuries in this case, I ask you to consider whether any of these doctors had ever seen this young man before this accident, and whether or not their whole opinion as to his condition is based on what they have seen subsequent to the accident. All I ask you is to be fair to the plaintiff and fair to the defendant and let your conscience be your guide."

A two-day trial followed. Judge Childs told the jury in his charge that "you must bear in mind that arguments, statements

and remarks of counsel are intended to help you in understanding the evidence and applying the law. But they are not evidence. If any argument, statement or remark has no basis in the evidence, then you should disregard that argument, statement or remark." He then instructed the jury that, as a matter of law, the defendant had been negligent, and then instructed fully on the matters of damages. The opening argument for the plaintiffs and the argument for the defendant followed.

Counsel for the defendant began by saying:

> "This has not been a particularly easy case in which to represent the Defendant in, for various reasons, which I discussed with you at the outset of the trial yesterday morning. And which, I would hope, have become abundantly clear as the case has progressed."

In his closing argument, counsel for the plaintiffs said:

> "* * * in twenty-eight years of trial, I have never heard of a case starting off this way. * * * But in the opening argument—it wasn't supposed to be an argument but it sounded like one * * *. And to stand up there and prejudice you and deliberately make statements about his client being crucified. And His Honor had to interrupt and tell you not to pay any attention, that that was improper. It was wholly improper. And then to add, in desperation, in his closing argument, 'remember what I told you in my statement in court, don't forget what I told you.' Now I say that is unfair. And I am depending on you, the members of the jury, to determine whether that is a fair effort to win a case on a basis of the facts and the evidence and all the instructions of Court, or is it to take your eye away from the target and do that is entirely improper."

We have set out in full the context of the remark which the appellants say was so prejudicial that its effect could not thereafter be cured, and subsequent relevant remarks of counsel, because we think they show that under the rules established by the cases Judge Childs did not abuse his discretion in re-

fusing to grant the mistrial motion. These rules are that improper or prejudicial statements, remarks or arguments of counsel generally are cured by reproof by the trial judge; to his discretion customarily is left the choice of methods to protect the fair and unprejudiced workings of the judicial proceedings and his decision as to the effect of that choice upon the jury and only in the exceptional case, the blatant case, will his choice of cure and his decision as to its effect be reversed on appeal. *Brooks v. Daley,* 242 Md. 185, 195-97; *Leach v. Metzger,* 241 Md. 533, 537; *Bailey v. Wray,* 230 Md. 359, 362-63; *Capital Traction Co. v. McKeon,* 132 Md. 79, 90-91; *Esterline v. State,* 105 Md. 629, 637-38; *cf. Nelson v. Seiler,* 154 Md. 63, 72, 73.

In the case before us the defendant's suggestion that the plaintiffs would seek to, and the jury would, crucify the defendant was improper as over-graphic and pejorative and, so, potentially prejudicial. But, as we see it, the probability of prejudice was eliminated by what followed the remark. Defendant's counsel immediately explained his choice of words by saying that his client was being charged "for all the prior problems of this young man" and suggested that what he meant by not wanting to see his client crucified was that his client should not be held responsible for the young man's prior condition.

Judge Childs, in denying the motion, then told counsel and the jury (which was in the last day of its service) that the true tenor of the opening statement of the plaintiffs' lawyer was that the plaintiffs' reliance would be on aggravation of a previous injury, and added: "I am sure and I know this jury well enough [to know] that nobody is going to be crucified here * * * but [counsel for defendant] please refrain from such graphic descriptions of jury actions here. This jury wouldn't do that under any circumstances."

Counsel for the defendant acknowledged the judicial reproof and the court's message to the jury by reiterating his plea for jury consideration of whether Joseph's condition was due to a previous harm or to the current accident, and said: "All I ask you is to be fair to the plaintiff and fair to the defendant * * *."

We think the trial judge was justified in concluding that prejudice to the plaintiffs by reason of the remark as to cruci-

fixion had been removed by defendant's counsel's explanations and the judge's reproof to counsel and his message to the jury that the characterization was improper and that it was not to and would not have any effect on the jury.

If doubt existed as to this, it would be removed by the subsequent argument of counsel for the plaintiffs. After Judge Childs had instructed the jury that arguments, statements or remarks of counsel without basis in the evidence should be wholly disregarded by the jury, the lawyer in his closing argument said to the jury:

> "And [for defendant's lawyer] to stand up there and prejudice you and deliberately make statements about his client being crucified. And His Honor had to interrupt *and tell you not to pay any attention, that that was improper*. It was wholly improper. And then to add, in desperation, in his closing argument, 'remember what I told you in my statement in Court, don't forget what I told you.' [Counsel for defendant actually said:
>
>> "This has not been a particularly easy case in which to represent the Defendant in, for various reasons, which I discussed with you at the outset of the trial yesterday morning. And which, I would hope, have become abundantly clear as the case has progressed."]
>
> Now I say that is unfair. And I am depending on you, the members of the jury, to determine whether that is a fair effort to win a case on the basis of the facts * * *." (Emphasis added.)

Counsel for the plaintiffs acknowledged that Judge Childs had instructed the jury to pay no attention and give no effect to the remark about crucifixion, an instruction which, as we have indicated, if immediately and adequately given almost always will cure the probability of prejudice. Nevertheless, he chose to revive the incident in the jury's mind in an apparent effort to win the sympathy of the jury for his clients as victims of unfair and improper tactics engaged in by the lawyer for the defendant.

If he failed in this calculated endeavor to win the jury as he says the verdicts of the jury show that he did, the plaintiffs have only themselves to blame.

*Judgments affirmed, with costs.*