RONALD E. FERRY ET AL. *v.* LINDA
JOY WALKER CICERO ET AL.

[No. 469, September Term, 1970.]

*Decided July 30, 1971.*

The cause was argued before MURPHY, C. J., and MOYLAN and POWERS, JJ.

*Jack H. Olender* for appellants.

*William Clague,* with whom was *Francis C. O'Brien* on the brief, for appellees.

POWERS, J., delivered the opinion of the Court.

Ronald E. Ferry and his wife, Mary C. Ferry, brought suit in the Circuit Court for Prince George's County, claiming damages resulting from injuries sustained by Ferry when he was a passenger in a taxicab being driven on Addison Road, a favored highway. The cab was in collision with a car which entered the favored highway from an intersecting road, where a stop sign was posted. The entering car was owned by John Carl Boblitz and was driven by Linda Joy Walker, a minor whose driver's license application was said to have been vouched for by Mrs. Mary Boblitz, her sister. Miss Walker later married, and became Mrs. Cicero.

The Ferrys sued Mrs. Cicero, Mr. and Mrs. Boblitz, and the driver and the owner of the taxicab. Upon appropriate motions all but Mrs. Cicero and Mrs. Boblitz were granted directed verdicts by the trial judge. The case went to the jury as to the defendants Linda Joy Walker Cicero and Mary Boblitz, and the jury returned a verdict for those defendants. Mr. and Mrs. Ferry appealed from the judgment entered on that verdict. They assert no claim on appeal against the taxicab driver or owner, nor do they contend that the judgment in favor

of John Carl Boblitz should be disturbed. The parties to
the appeal stipulated that the only portions of the pro-
ceedings to be transcribed for inclusion in the record
were the testimony of the investigating police officer,
and the arguments of counsel.

Appellants raise two points in this appeal:

1. Whether hearsay testimony, prejudicial to plain-
tiffs, was properly admitted at the instance of one defen-
dant, against his cross-defendant, with an instruction to
the jury that it was not admissible against plaintiffs.

2. Whether improprieties of defense counsel consti-
tuted a studied effort to prejudice the jury, and deprived
plaintiffs of a fair trial.

1.

Each of the two sets of defendants filed a cross-claim
for contribution against the other. At the trial, plaintiffs
called the officer who investigated the accident, William
R. Roberts of the Prince George's County Police, for di-
rect examination. In his cross examination by counsel
for appellees the officer was permitted by Judge James
H. Taylor, who presided, to relate what appellee Cicero
told him concerning the accident. Her statement to the of-
ficer had been made in the presence of the cab driver,
(a defendant and a cross-defendant) but not in the pres-
ence of appellant Ferry. It was to the effect that she had
stopped at the sign and waited for oncoming traffic, then
proceeded to make a left turn onto Addison Road, when
the rear end of her vehicle started sliding on the icy sur-
face of the road, and caused the front of her vehicle to
turn around and come back across the northbound lane
of Addison Road.

In ruling on appellants' objection to this evidence as
hearsay, Judge Taylor said:

"THE COURT: I overrule the objection, but
with this admonition, and I say this to the fore-
man and ladies and gentlemen of the jury, what-
ever the witness may testify to as having been

said by Mrs. Cicero or any other parties before the Court outside of the presence of Mr. Ferry is not admissible against him, it is not to be considered to his favor or to his prejudice, this is only as between the other parties but not as to him, and I think I would ask you to accept whatever the statement might be with that admonition."

In 1 Jones on Evidence (Fifth Edition), § 203, the author says:

"So evidence which is admissible as to one party should not be excluded because it is not competent against another party to the suit. In such case the effect of the evidence should be limited by proper instructions."

We also find the rule clearly expressed in 2 Conrad, Modern Trial Evidence, § 1226, where it is said:

"Where there are several parties on one side, or where several causes are tried together and evidence is offered which is competent as to one or more parties or cases, but not competent as to other, the objecting party has no right to object but should request the court to limit the evidence."

We think that the writers quoted above state the correct rule, and Judge Taylor was correct in his ruling on this objection, with the admonition he gave to the jury limiting the applicability of the testimony.

### 2.

Appellants point to four instances in which they say that the conduct of appellees' counsel was so improper that it was prejudicial to the point of depriving appellants of a fair trial. We shall discuss each of these instances.

Appellants argue that appellees' counsel acted improperly:

2.

By offering in evidence a deposition of the police officer, not a party, but who had already testified and had been excused, knowing it to be inadmissible. Thereafter, in argument, appellees' counsel said:

> "I tried to put his deposition in, and put it on this side, but they must have been afraid of something in that document because it didn't come in. As a matter of fact, they must have been afraid of a lot of things in this trial because I think most of the testimony of the transcript will show that 90 per cent of it is objections and arguments as to procedural aspects of this trial. As I told you in my opening statement, I think, I like to give you the whole ball of wax. I attempted to."

We agree that counsel must have known that the deposition was not admissible, and that it was improper for him to make the offer in the presence of the jury. However, appellants' objection to it was properly sustained, and the offer did not in any way convey to the jury any substantive information. On the other hand, the statement in argument quoted above, which grew out of the improper offer, we consider both improper and prejudicial. But when it was made, there was no objection, no request for an admonition to the jury, and no motion for a mistrial. We cannot measure the extent of prejudice that may have been generated, in the atmosphere and under all the circumstances that existed at the time, but no doubt the trial judge could have done so, had he been requested. We fully understand the dilemma of opposing counsel, requiring instant evaluation of several alternatives. A mistrial would require a new trial, with its attendant delay and expense. An interruption resulting in any action by the judge short of a mistrial may well serve only to emphasize and thus intensify the harm. When the tactical decision to ignore the argument is reached, and often it is the best decision, there is noth-

ing before the appellate court for its consideration. Maryland Rule 1085, *B. and O. R. R. Co. v. Plews,* 262 Md. 442, 278 A. 2d 287, and cases there cited.

### b.

By arguing to the jury about a "collateral source" after the court had ordered that there was to be no reference to "collateral source." After referring to several of the items of claimed special damage, appellees' counsel, in argument, said, "That poor man, how much has he spent. I bet he hasn't spent a dime." Appellants' counsel objected, Judge Taylor sustained, and directed that "It will be stricken as to the jury."

### c.

By continued insistence on arguing personal experiences and personal opinions. During the trial it was brought out that a doctor, testifying for appellant, was also treating a patient who was a client of appellees' counsel. In his argument to the jury appellants' counsel said, "And then the doctor who gave his eminent qualifications, and who counsel for the defendant acknowledged was examining a client for him * * *." In appellees' argument which followed, counsel took up the subject thus opened by his opponent, and when there was objection, Judge Taylor first limited, then restricted any further argument along that line.

### d.

By making "golden rule" arguments aimed at the jury's self interest. This point is directed at comments made as to the vicarious liability of Mary Boblitz for negligence of her sister. We do not know what evidence supported this theory of imputed liability, nor what instructions the judge gave, or was asked to give, concerning it. When appellees' counsel referred to it in argument, and there was objection, Judge Taylor said that he saw nothing objectionable at that point. The "golden rule" argument, if it was one, came later, and without further objection. In any event, it concerned only the imputation of appel-

lee Cicero's negligence to appellee Mary Boblitz. In view of the jury's verdict that appellee Cicero was not negligent, the failure to impute negligence to appellee Mary Boblitz could not have resulted from prejudice.

---

The scope of the appeal as it is brought to us does not require an evaluation of the evidence of negligence. Although it is not in the record before us, we are told that appellee Cicero testified directly to the same version of the accident which the police officer quoted her as giving. Her testimony was admissible against appellants. The case may appear at first glance to call for application of the boulevard rule, but in view of the description of the accident, this is not necessarily so. We note from the docket that at the close of the whole case, plaintiffs made a motion for a directed verdict, and the motion was denied. That denial is not claimed here to have been error.

It cannot rightly be said that the zeal of advocacy knows no bounds. There are bounds, and when they are exceeded and injustice may result, the trial judge, when called upon to do so, will evaluate the harm in the setting in which it arose, and take whatever curative steps he feels are necessary.

Dealing with a similar point in *DeMay v. Carper*, 247 Md. 535, 233 A. 2d 765, Chief Judge Hammond said for the Court of Appeals at page 540:

> "These rules are that improper or prejudicial statements, remarks or arguments of counsel generally are cured by reproof by the trial judge; to his discretion customarily is left the choice of methods to protect the fair and unprejudiced workings of the judicial proceedings and his decision as to the effect of that choice upon the jury and only in the exceptional case, the blatant case, will his choice of cure and his decision as to its effect be reversed on appeal."

See also *B. and O. R. R. Co. v. Plews, supra.*

In reaching his decision as to the effect, and in exercising his choice of methods to protect the fairness of the proceedings, the trial judge has many options — he may fit the pattern to the cloth. He may conclude to take no action, he may admonish the jury, he may restrict or forbid altogether any further argument on the point, he may permit opposing counsel to respond, he may declare a mistrial, he may take any other appropriate action. And while the trial judge may, *sua sponte,* do any of these things, we cannot say that there is an abuse of discretion in not acting, when he is not called upon by the offended party to act.

We are compelled to say that we find no reversible error in the record before us. This is not to say that we approve of the plane upon which this case was tried. The instances referred to, and others, could easily have amounted to prejudice in their cumulative effect. Had a motion for mistrial been made and denied, we would have reversed for an abuse of discretion.

We also feel that trial judges should have no reluctance to exercise, *sua sponte* if necessary, the power they have to maintain strict control over the trial, "to protect the fair and unprejudiced workings of the judicial proceedings."

*Judgment affirmed.*
*Appellants to pay costs.*