RONALD M. KELCH ET UX. *v.* MASS
TRANSIT ADMINISTRATION ET AL.

[No. 806, September Term, 1978.]

*Decided April 18, 1979.*

The cause was argued before MORTON, MELVIN and LISS, JJ.

*Harry Goldman, Jr.,* with whom were *Norman Hochberg* and *Alex S. Katzenberg, III,* on the brief, for appellants.

*Patrick A. O'Doherty,* with whom was *H. Jerome Fenzel* on the brief, for appellees.

LISS, J., delivered the opinion of the Court. MELVIN, J., concurs and filed a concurring opinion at page 305 *infra.*

This is an appeal by Ronald M. Kelch and Carol Kelch, his wife, appellants, from a judgment returned in favor of the Mass Transit Administration, appellee, after a lengthy trial in the Superior Court of Baltimore City.

Appellant, Ronald Kelch, on September 18, 1974 was operating a motorcycle in Baltimore City in a northerly direction on Pulaski Street at its intersection with Ramsay Street. The appellant's version of the facts stated that a bus belonging to the M.T.A., appellee, was being operated in a southerly direction on Pulaski Street and that its driver attempted to make a left turn, onto Ramsay Street, into the path of the appellant's vehicle. The bus driver testified that his view of the road was partially blocked by the contour of the area which included a curve in the road approaching the intersection of Pulaski and Ramsay Streets; that he had begun his turn; that the front of his vehicle had barely crossed the center line when he saw the motorcycle and stopped the bus; and that his bus was stationary for several seconds when it was hit by the motorcycle. The appellee presented as a witness a passenger on the bus who estimated that the bus had been at a standstill about four seconds when it was struck by the motorcycle.

The testimony presented by the appellant indicated that he had sustained serious and disabling injuries causing him to

incur substantial medical bills. Appellant testified that he sustained serious monetary losses because of his inability to return to work as a result of his injuries. The case was submitted to the jury which returned a verdict for the defendants-appellees, and it is from this judgment that this appeal was taken.

Appellants raise three issues, the first of which is divided into three sub issues. Those issues are stated by the appellants as follows:

1. Were the appellants denied the right to have their case tried by a fair and impartial jury?

A. Did the court err in failing to grant appellants' requested *voir dire* question No. 11 concerning co-equal rights of motorcycles and other vehicles lawfully using the highway?

B. Did the court err in failing to grant appellants' motion *in limine* concerning mention of Social Security disability benefits as a collateral source?

C. Did the court err in failing to grant appellants' requested mistrial motions and taking remedial action after numerous instances of misconduct of appellees' counsel?

2. Whether the lower court committed prejudical error in denying appellants' discovery of appellees' accident reports prior to trial.

3. Whether the trial court erred in failing to grant a directed verdict in favor of the appellants on the issue of negligence.

## ISSUE 1A

Prior to the impaneling of the jury appellants requested the trial court (Dyer, J.) to propound its *voir dire* question No. 11. That question stated: This case involves a collision between the plaintiff's motorcycle and a Mass Transit Administration bus. Do you understand that a motorcycle is, by law, a licensed motor vehicle which has the same rights, and is subject to the same obligations and duties as any other motor vehicle driven on the streets? The trial judge refused to propound this question, but during the course of *voir dire*

questioning did ask if any of the prospective jurors had any feelings, prejudices or fixed opinions which would prevent them from rendering a fair and impartial verdict in this case. One of the prospective jurors stated to the judge, in the presence of the other members of the jury panel, that her father had been killed on a motorcycle and she considered them dangerous. That prospective juror as well as several others were discharged for cause; none of the remaining members of the prospective jury panel expressed any prejudice or admitted an inability to render an impartial verdict. Appellants contend the refusal of the trial court to propound *voir dire* question No. 11 amounted to an abuse of the trial judge's discretion. We do not agree. We suggest that the appellants have misconstrued the purpose of *voir dire* questioning. *Voir dire* is not an appropriate vehicle for instructing the jury in the law of the case. The sole purpose of *voir dire* is to ascertain the existence of cause, if any, to disqualify a juror from participating in consideration of a case. *Casey v. Roman Catholic Archbishop,* 217 Md. 595, 605, 143 A. 2d 627 (1957); *Grossfeld v. Braverman,* 203 Md. 498, 101 A. 2d 824 (1954); *Adams v. State,* 200 Md. 133, 88 A. 2d 556 (1952). Either party in a jury trial has a right to have questions propounded to prospective jurors on their *voir dire* which are directed to a specific cause for disqualification, and the failure to allow such questions is an abuse of discretion constituting reversible error. *Alexander v. R.D. Crier & Sons Co.,* 181 Md. 415, 30 A. 2d 757 (1943); *Cohen v. State,* 173 Md. 216, 196 A. 819 (1937). The scope of questions propounded to jurors is in the discretion of the trial court. In exercising that discretion, the Court of Appeals said, in *Bryant v. State,* 207 Md. 565, 583, 115 A. 2d 502 (1955):

> In the exercise of ... discretion, the trial judge should adapt the questions to the needs of each case in the effort to secure an impartial jury. Any circumstances that may reasonably be regarded as rendering a person unfitted for jury service may be made the subject of questions and a challenge for cause. Accordingly an examination of a juror on his *voir dire* is proper as long as it is conducted within

the right to discover the juror's state of mind in respect to the matter in hand or any collateral matter reasonably liable to unduly influence him.

We find no basis for holding that the trial court was arbitrary or that it abused its discretion in refusing to propound the general proposition of law encompassed in *voir dire* question No. 11. This is particularly true when it is considered that the trial judge did ask the *voir dire* question which required the prospective jurors to answer whether they had any feelings or prejudices concerning people who owned or operated motorcycles which would prevent the juror from returning a fair and impartial verdict. The statement of the law contained in *voir dire* question No. 11 was appropriately given to the jury at the conclusion of the evidence before the case was submitted to the jury. Finally, we note that at one point in the proceedings, counsel for the appellants complimented the trial judge for making available to the litigants a fair and impartial jury panel. We must conclude under the circumstances that the complaint concerning the court's abuse of its discretion is an afterthought occasioned by the unsatisfactory verdict. We find no abuse of discretion by the trial court.

## ISSUE 1B

Appellants next urge that the trial court erred in failing to grant appellants' motion *in limine* restricting the appellees from mentioning social security disability benefits being paid to the appellant, Kelch, since they were funds paid to Kelch from a collateral source and the appellee was entitled to no credit in determining the jury's assessment of damages because of such collateral funds. Again we disagree. The trial judge denied the motion *in limine* but ruled that the relevance of the social security benefits was to be restricted only to the issue of whether the payment of these benefits had any effect on the appellant's statement that he was unable to work. The trial judge very carefully instructed the jury of that in assessing damages:

... you are not to consider the social security benefits which have been paid to Ronald Kelch and

his family in the past, and which may be paid to him in the future, for the reason that the law considers that Mr. Kelch has earned such social security payments by his labor, and that such earnings should not benefit the person whose negligence caused this accident, if you find such negligence. You are therefore instructed that you should not reduce the amount of your verdict either by reason of social security benefits or the fact that certain medical or hospital bills may have been paid by medical assistance, or from some other collateral source. However, you may consider the collateral source of money in judging the motivation of the plaintiff to return to work, and for those same reasons you should not reduce your verdict, if any such you find, by the amount of any income tax considerations or any estimated tax.

We consider this a fair statement of the law. The Court of Appeals, in *Leizear v. Butler,* 226 Md. 171, 172 A. 2d 518 (1961), approved the admission of evidence that a plaintiff had been paid his wages by his employer during his absence from work, allegedly as a result of injuries sustained in an accident but ruled that the amount of damages was not to be reduced because of payment of these funds from a collateral source. In *Leizear, supra,* the Court of Appeals noted with approval that the evidence of collateral payments is admissible if there is evidence in the case of malingering or exaggeration of injury (*McElwain v. Capotosto,* 122 N.E.2d 901 (1954); *Union Transports, Inc. v. Braun,* 318 S.W.2d 927 (1958); *cf. Ridilla v. Kerns,* 155 A. 2d 517 (1959)) but evidence as to collateral payments is inadmissible in the absence of evidence of malingering or exaggeration or where the real purpose of the evidence offered as to collateral sources is the mitigation of liability for damages of the defendant. *R. E. Dumas Milner Chevrolet Co. v. Morphis,* 337 S.W.2d 185 (1960); *McElwain v. Capotosto, supra; Hellmueller Baking Co. v. Risen,* 174 S.W.2d 134 (1943). In the case *sub judice,* the appellee raised the issue of exaggeration of the plaintiff's injuries by the appellees' cross-examination of the attending physician

during which the physician conceded that there was, at least, a suggestion that the appellant was unwilling to seek employment possibly because the social security benefits the appellant received were greater than he might have earned if he were employed. We find no error in the trial court's rulings on this issue.

## ISSUE 1C

We find no merit in appellants' contention that the trial court erred in refusing to grant their motion for a mistrial by reason of the misconduct of appellees' counsel. In spite of the appellants' suggestion to the contrary, we perceive no appeal to racial prejudice. The decision to grant or to deny a mistrial rests in the sound discretion of the trial judge, and in the absence of proof of abuse of that discretion his decision will not be disturbed on appeal. Generally, the choice of measures to protect the fair, unprejudiced workings of the trial court's proceedings is left to the discretion of the court, and only in exceptional cases will its choice be reviewed by the appellate courts. *Nelson v. Seiler,* 154 Md. 63, 139 A. 564 (1927).

In *Ferry v. Cicero,* 12 Md. App. 502, 280 A. 2d 37 (1971), quoting from the opinion of Chief Judge Hammond in *DeMay v. Carper,* 247 Md. 535, 233 A. 2d 765 (1967), we adopted the following rule:

> These rules are that improper or prejudicial statements, remarks or arguments of counsel generally are cured by reproof by the trial judge; to his discretion customarily is left the choice of methods to protect the fair and unprejudiced workings of the judicial proceedings and his decision as to the effect of that choice upon the jury and only in the exceptional case, the blatant case, will his choice of cure and his decision as to its effect be reversed on appeal. 12 Md. App. at 508.

We have carefully read and considered the extensive record extract in this case and conclude that the trial judge was in complete command of the trial and that there is nothing in the record which would indicate that the conduct of appellee's

counsel required the court to grant a mistrial. On the contrary, we find that the trial court's rulings in this hard fought case provided a fair and unprejudicial trial for both sides.

## ISSUE 2

The appellants next assert that the discovery judge committed prejudical error when he denied appellants access. to certain reports, prior to trial, concerning the accident which were in the appellees' possession. On March 28, 1978, appellants sent a notice of deposition to appellees' counsel which required attendance at a deposition, scheduled for April 7, 1978, of certain employees of the M.T.A. including the bus driver. The notice further required M.T.A. to produce the person who investigated the accident, as well as Edward Brizendine, who signed M.T.A.'s answer to interrogatories. The deponents were instructed to bring with them statements, diagrams, photographs and M.E.15 and M.E.18 reports prepared by employees of M.T.A. The deponents failed to appear at the deposition and appellants filed a motion to compel the discovery proceeding and attached to this motion a statement of points and authorities. Appellees filed an answer in opposition to the appellants' motion and the matter came up for hearing before Judge David Ross, sitting as Discovery Judge for the Supreme Bench of Baltimore City. Judge Ross denied the motion.

Maryland Rule 400 d. provides as follows:

d. *Trial Preparation Materials.*

Subject to the provisions of sections e (Party's or Witness' Own Statement) and f (Information From Experts Who Are Expected to Testify at Trial) of this Rule, a party may not obtain discovery of documents and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) except upon a showing that

(i) the materials are otherwise discoverable under section c of this Rule, and

(ii) the party seeking discovery has substantial need of the materials in the preparation of his case, and

(iii) he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.

The provisions of Rule 400 d. are substantially similar to the requirements of Federal Rule 26(b)(3) which places the burden on a party who seeks discovery to show a "substantial need" in order to be entitled to discovery. "Substantial need" requires a showing of (1) importance of the material to be discovered, (2) an inadequate alternative means of discovery, and (3) a lack of documents substantially equivalent to the documents sought. *Kennedy v. Senyo,* 52 F.R.D. 34 (D.C. Pa. 1971).

Appellants rely heavily on *McDougall v. Dunn,* 468 F. 2d 468 (4th Cir. 1972), as authority for their contention that the ruling of the discovery judge refusing discovery was reversible error. In that case, a plaintiff injured in an automobile accident sought to require the defendant to produce statements, and to permit the plaintiff to copy those statements which the defendant and a third occupant of the car made to an insurance adjuster. The defendant objected to the demand on the basis that the statements were part of the defendant's work product and argued that the demand was not supported by good cause. The lower court refused to require the defendant to comply with the plaintiff's motion. The Fourth Circuit, in reversing, found that the insurance adjuster had obtained the statements more than two and a half years before the plaintiff made a claim, retained counsel, or filed suit. The court held that the statements had been obtained in the regular course of the adjuster's duties and presumably were incorporated in the files of the company.

The Fourth Circuit, relying on *Thomas Organ Co. v. Judranska Soblodna Plovidta,* 54 F.R.D. 367, 372 (D.C. Ill. 1972), said:

> This trend which was followed in the framing of Rule 26(b)(3) compels the Court to conclude that *any* report or statement made by or to a party's agent (other than to an attorney acting in the role of counsellor), which has not been requested by nor prepared for an attorney nor which otherwise reflects the employment of an attorney's legal expertise must be conclusively presumed to have been made in the ordinary course of business and thus not within the purview of the limited privilege of new Rule 26(b)(3) and (b)(4).

> If, in line with this construction of Rule 26(b)(3), it be assumed that the statements herein do not fall within the definition of materials, the production of which is controlled by such subdivision of the Rule, then the only applicable requirement for their production under the other subdivision of the Rule was relevance.... On that there could be no dispute and the statements should have been ordered produced. [Footnotes omitted]

The Court went on to say at 472-74:

> Even if, however, this view not be accepted and the statements be considered materials [sic], the production of which was controlled by Section 26(b)(3), the statements would still have been discoverable if it appeared that the party seeking discovery met the conditions of that subdivision that he "has (had) substantial need of the materials" and "he is (was) unable without undue hardship to obtain the substantial equivalent of the materials by other means." A lawsuit, it has been well said, "is not a sporting event, and discovery is founded upon the policy that the search for truth should be aided." Tiedman v. American Pigment Corporation (4th Cir. 1958) 253 F.2d 803, 808. Statements of either the

parties or witnesses, taken immediately after the accident and involving a material issue in an action arising out of that accident, constitute "unique catalysts in the search for truth" in the judicial process; and where the party seeking their discovery was disabled from making his own investigation at the time, there is sufficient showing under the amended Rule to warrant discovery. Southern Railway Company v. Lanham (5th Cir. 1968) 403 F.2d 119, 128, reh. den. 408 F.2d 348; Goosman v. A. Duie Pyle, Inc. (4th Cir. 1963) 320 F.2d 45, 50-53; Southern Railway Company v. Campbell (5th Cir. 1962) 309 F.2d 569, 572; De Bruce v. Pennsylvania R. Co. (D.C. Pa. 1947) 6 F.R.D. 403, 406; Kennedy v. Senyo (D.C. Pa. 1971) 52 F.R.D. 34, 36-37; Clower v. Walters (D.C. Ala. 1970) 51 F.R.D. 288, 289. The reason for such result was stated by this Court in New York Central Railroad Company v. Carr (4th Cir. 1957) 251 F.2d 433, 435, where it was observed that ". . . the lapse of many months and the dimming of memory provides much reason for his counsel to examine any substantially contemporaneous declarations or admissions. Aside from what assistance it may be in the preparation of a case for trial, the production of such a statement, after the lapse of time, permits a more realistic appraisal of cases and should stimulate the disposition of controversies without trials."

This conclusion, as expressed in *Carr,* is in line with the comments of the Advisory Committee in connection with the 1970 amendments of Rule 26. In this comment, the Committee suggested that a liberal attitude be adopted in the application of the Rule as it relates to "witness statements taken by an investigator" as distinguished from "other parts of the investigative file" and indicated that a special showing warranting discovery of such statements existed when the witness had "given a fresh and contemporaneous account in a written statement

while he is available to the party seeking discovery only a substantial time thereafter." 48 F.R.D. 501. The Advisory Note cites Guilford National Bank v. Southern Ry. Co. (4th Cir. 1962) 297 F.2d 921, 926 and *Goosman, supra,* though decided before the 1970 amendment of Rule 26, as illustrative of the circumstances when discovery of witnesses' statements should be granted and when it should be denied under the 1970 Amended Rules. Thus, in *Guilford,* the Court said that ". . . it appears that the courts are unanimous in holding that a showing that the statements were made at the time of the accident satisfies the good cause requirement of Rule 34," if the party seeking discovery "had no opportunity to question the witnesses until weeks or months later, . . . ." Discovery, however, was denied in that case because the party seeking discovery had taken statements from the same witnesses beginning "six days after the accident" and concluding "three days later"; in short, because the party seeking discovery had himself been able to take roughly contemporaneous statements, his motion was denied. [Footnotes omitted.]

However, we think this case is distinguishable from the case *sub judice,* as the appellant employed counsel almost immediately after the accident. The accident occurred on September 18, 1974, suit was filed on October 4, 1974, and trial was scheduled for May 1, 1978. Appellants' motion to compel discovery was not filed until March 28, 1978 with depositions to be held on April 7, 1978. There was no showing that there had been any effort whatsoever during that four-year period to discover the information sought by the appellants or their counsel.

In denying appellant's motion, Judge Ross was correct in stating that our trial courts had for a number of years routinely denied motions to compel production of documents which were prepared by employees of an assured at the

request of, and for, their liability carriers. Judge Ross noted that:

> The critical point is that the purpose of making the report, the purpose of giving this data, the purpose of collecting the data, is to supply it to the liability carrier whose only possible interest in obtaining such information is in anticipation of litigation. The rule very clearly says that such information, such documents prepared by a party, his attorney, his assured, his agent and so forth and so on is not discoverable unless you meet the several criteria establishing a substantial need.

*See also Mendels v. Mercantile Trust Co.* (Sup. Ct. of Baltimore City, Niles, C.J.), Daily Record, September 16, 1944, where it was held that although a party has a right to inform himself before trial of the facts and contentions forming his opponent's case, he has no right through discovery to obtain copies of statements procured by his opponent from witnesses in preparation for trial. He has the right only to obtain the names of persons having knowledge of the facts and to take their depositions himself. Admittedly the practice under the Rules 400 series is much less liberal than that contemplated by the *McDougall* case, *supra,* but we perceive this to be a legislative matter to be addressed by the Rules Committee or the Maryland Legislature if any change in the longstanding interpretation of Rule 400(d) is to be affected.

The record of the hearing before Judge Ross fails to disclose the laying of any factual foundation from which such "substantial need" or "undue hardship" could be established as would require the granting of the appellants' motion.

The Court of Appeals has stated on several occasions that trial judges who are called upon to administer the discovery rules are vested with a reasonably sound discretion which will not be disturbed in the absence of an abuse of that discretion. *Baltimore Transit Co. v. Mezzanotti,* 227 Md. 8, 174 A. 2d 768 (1961); *Hirsch v. Yaker,* 226 Md. 580, 174 A. 2d 728 (1961).

Appellants additionally rely for support of their position on

a decision by Judge Niles in the case of *Bledsoe v. Baltimore Transit Company,* Daily Record, June 13, 1955, which involved an accident report made to a superior by a subordinate employee. In *Bledsoe,* the plaintiff, who was injured in a trolley accident, obtained the deposition of the operator of the trolley and sought to inspect a report that the operator had submitted to his employer. The Court relied on then Discovery Rule 4, "Discovery of Documents and Property," which provided:

> Upon motion of any party showing good cause therefore and upon notice to all other parties, the court may, at any time in any proceeding,
>
> > (1) order any party to produce and permit the inspection . . . of . . . objects or tangible things not privileged . . ., which may constitute or contain evidence material to any matter involved in the proceeding and which are in his possession, custody, or control.

The adoption of the 400 Rules has changed the language of Rule 4. Rule 400 d retains the exclusion of those things that are prepared in anticipation of litigation but extends the protection from production to documents and tangible things prepared by or for another party, or by or for that other party's representative including his attorney, consultant, surety, indemnitor, insurer or agent. Thus, the test stated in *Bledsoe, supra,* with regard to litigation preparation has been substantially altered. In addition, the "good cause" standard involving a lawyer's work product has been changed. Where the former test was designed to protect only the attorney's mental impressions, opinions, conclusions, or legal theories, Rule 400 d specifically clothes any other representative of a party with the same protection. This change represents a significant modification in the standard for production as measured against the *Bledsoe* formulation as evidenced by the comments of Judge Ross.

## ISSUE 3

Finally, appellants state that the trial court erred in denying their motion that the alleged violation of Section 21-402 of the Transportation Article of the Annotated Code of Maryland (1957, 1977 Repl. Vol.) was sufficient to require a directed verdict in their favor on the issue of negligence. The above stated section of the Code is the Maryland Left Turn Statute. The testimony in this case generated the issue of whether the driver of the bus had seen the approaching motorcycle and had stopped his vehicle in a position where there remained ample room for the motorcycle to clear the intersection, thereby exercising his right of way without striking the bus. Appellants would have been entitled to a directed verdict only if "there was in evidence a prominent and decisive act susceptible of but one interpretation in the determination of which ordinary minds would find it impossible to differ." *Raff v. Acme Markets, Inc.,* 247 Md. 591, 233 A. 2d 786 (1967); *Freudenberger v. Copeland,* 15 Md. App. 169, 289 A. 2d 604 (1972); *Mazer v. Stedding,* 10 Md. App. 505, 271 A. 2d 381 (1970).

The testimony of the bus driver was sufficient to raise an issue of contributory negligence which was required to be submitted to the jury for its determination as triers of the facts.

*Judgments affirmed.*
*Costs to be paid by appellants.*

*Melvin J., concurring* :

Although I agree that the judgment below should be affirmed, I cannot agree with the analysis of the discovery issue discussed under the heading of "Issue 2" in the majority opinion.

I agree that *if* there had been evidence before the hearing judge that the documents sought by the plaintiffs were "prepared in anticipation of litigation or for trial", it could not be said that the hearing judge abused his discretion in denying the plaintiffs' motion to compel discovery. The

difficulty I have with agreeing that there was no error in denying the motion is that at the hearing there was *no evidence* presented by either side concerning the *purpose* of preparing the documents sought to be discovered.[1] Absent such evidence, I am at a loss to understand how the judge could conclude, *in vacuo,* that "... the purpose of making the report, the purpose of giving this data, the purpose of collecting the data, is to supply it to the liability carrier, whose only possible interest in obtaining such information is in anticipation of litigation."

Where, as in this case, the plaintiffs' request for discovery of documents is refused by the defendant on the ground that the documents were prepared in anticipation of litigation and are therefore immune from discovery, and a hearing is thereafter held on a motion to compel discovery, the burden is on the party refusing discovery to establish the grounds of the claimed immunity, *i.e.,* that the documents sought were in fact prepared in anticipation of litigation. In my opinion, the defendant failed to meet that burden. At the hearing the plaintiffs' counsel asserted that the reports he sought were "routine reports" "done in the regular course of Mass Transit Administration's business in the year 1974 [the year of the accident] ...." The defendant's counsel, on the other hand, asserted that the documents sought "are all documents in anticipation of litigation". Statements of counsel, of course, are not evidence.

It is apparent from the record that the principal document sought by the plaintiffs was an accident report made by the M.T.A.'s Transportation Supervisor, Mr. Lee Harvin. As later revealed by his testimony at trial, Mr. Harvin arrived at the scene of the accident within 15 minutes after it happened, made a diagram of the scene, got a list of the witnesses, and took a statement from the bus driver. All this information was embodied in a report to his employer, M.T.A. On the report form was a space to indicate "motion of company vehicle". Mr. Harvin had written opposite this printed notation the word "moving". The record indicates that the accident report,

---

1. Moreover, the offer of defendants' counsel to allow the judge to inspect the documents in camera was refused by the judge.

or a copy of it, was given to plaintiffs' counsel at trial just prior to Mr. Harvin's taking the stand to testify for the defendant. On cross-examination by plaintiffs' counsel, Mr. Harvin was fully questioned concerning the entire report, including the "moving" notation.

On appeal, the plaintiffs contend they were prejudiced by not having the report before trial. — "that if Harvin's report had been ordered produced on Discovery at Deposition, the driver's lie could have been nailed before trial and the case won by the Plaintiffs . . . ." I think this argument is specious. The alleged "lie" was the driver's testimony at trial that the bus had been stopped for 4-5 seconds in the intersection before the defendant's motorcycle ran into it. The plaintiff argues that this is inconsistent with Harvin's notation on the accident report that the bus was "moving". Harvin testified, however, that the "moving" notation was not meant to indicate that the bus was moving "at the time of impact". He further testified on direct examination, quoting from the accident report, without objection, that the driver had told him at the scene that, "He came to a complete stop in the intersection. The motorcycle ran into the left front of the Coach." This is consistent with the driver's answers to interrogatories propounded by the plaintiffs, some three years before the trial, in which he said: "[D]efendant started to make a left turn, the plaintiff was coming northbound at a high rate of speed; the bus stopped and the [plaintiff] continued in a straight path without slowing down or trying to go around the bus and ran into the left side of the bus". The plaintiffs could therefore hardly claim they were surprised by the bus driver's testimony at trial. Regardless of the inferences that may be drawn from the accident report and the driver's testimony, it seems clear in the circumstances of this case that the plaintiffs have failed to show they were prejudiced by any error that may have been made by the hearing judge in not allowing pre-trial discovery of the accident report. I would therefore hold that it is not necessary to determine the correctness of the hearing judge's ruling on the motion to compel discovery, for even assuming him to be wrong, the error would not warrant reversal of the final judgment.

As the majority opinion now stands, however, there being no evidence presented on the issue at the pre-trial hearing, I can only conclude that the opinion is authority for the proposition that *any* relevant accident report made by an employee of a common carrier must automatically be regarded as "prepared in anticipation of litigation or for trial" and therefore not discoverable, absent a showing of "substantial need" or "undue hardship" pursuant to Md. Rule 400 d (ii) (iii). I cannot agree with such a proposition. I think it flies in the face of the basic philosophy and purpose of the discovery rules. "Modern discovery statutes or rules are intended to facilitate discovery, not to stimulate the ingenuity of lawyers and judges to make the pursuit of discovery an obstacle race" (*Barnes v. Lednum,* 197 Md. 398, 406-407 (1951)) and "are to be liberally construed". (*Balto. Transit v. Mezzanotti,* 227 Md. 8, 13 (1961)). "No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying her opponent's case". (*Hickman v. Taylor,* 329 U. S. 495, 507, quoted with approval in *Hallman v. Gross,* 190 Md. 563, 574 (1948)).

That accident reports are not automatically regarded as "prepared in anticipation of litigation or for trial" is shown by the many cases and text writers holding to the contrary. See 8 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2024 at 198-199 (1970) and cases cited in footnote 25 thereof and the 1978 Pocket Part thereto. The noted authors discuss at length Federal Rule 26 (b) (3), adopted in 1970, that was followed by Maryland in adopting, in 1973, Md. Rule 400 d in almost identical terms.